Ramos Buonomo, Jueza Ponente
*728 TEXTO COMPLETO DE LA SENTENCIA
El Estado Libre Asociado de Puerto Rico (E.L.A.), la Administración de Vivienda Pública (Vivienda) y el Sr. Miguel Rodríguez, en su capacidad personal y como Administrador de Vivienda, nos solicitan la revocación de la sentencia sumaria emitida el 18 de diciembre de 1997 por el Tribunal de Primera Instancia, Sala Superior de San Juan. Mediante dicho dictamen se declaró con lugar la demanda sobre sentencia declaratoria y daños y perjuicios presentada por Management Administration Services, Corp. (M.A.S.) contra los apelantes y se declaró sin lugar la reconvención presentada por los apelantes contra M.A.S. por alegado incumplimiento de contrato.
Por los fundamentos que pasamos a exponer, se confirma la sentencia sumaria apelada.
I
La Administración de Vivienda Pública contrató los servicios de M.A.S. para que ésta estuviera a cargo de la administración y mantenimiento de varios residenciales públicos localizados en el área de San Juan y Ponce.
Como parte del contrato de administración, M.A.S. venía obligada a mantener las viviendas a su cargo dentro de los requisitos exigidos por la reglamentación federal aplicable a proyectos de vivienda de esta índole, en específico con lo dispuesto en 24 C.F.R. see. 882.109. Dicha reglamentación establece los requisitos mínimos con los que debe cumplir una unidad de vivienda para poder ser habitable. Los mismos se conocen como "Housing Quality Standards" (H.Q.S.).
Según una de las cláusulas del contrato suscrito entre las partes, los honorarios por concepto de administración no le serían pagados a M.A.S. por aquellas viviendas que no cumplieran con los H.Q.S. (Artículo B-2 (H) del contrato, pág. 135 del escrito de apelación).
Para evaluar el desempeño de M.A.S. y de acuerdo a las exigencias de la reglamentación federal, Vivienda le exigía a M.A.S. la realización de evaluaciones periódicas como parte del "Public Housing Management Assessment Program" (P.H.M.A.P.). El propósito de este programa es evaluar las capacidades y deficiencias en el desempeño de las agencias públicas, de los administradores privados y cualquier otro organismo a cargo de la administración de viviendas públicas.
Estas evaluaciones constan de varios indicadores. Entre éstos, el indicador 6 evalúa el promedio de días que le toma a un administrador completar las órdenes de trabajo. El indicador 7 evalúa, entre otros factores, si las unidades cumplen con los H.Q.S. M.A.S. era quien realizaba sus propias evaluaciones.
El 5 de agosto de 1994, Vivienda le requirió a M.A.S. que completara y presentara la certificación del indicador 7 referente a los H.Q.S. para el período comprendido entre julio de 1993-94. El 26 de agosto de 1994, M.A.S. presentó a Vivienda las certificaciones requeridas. Según alega Vivienda, M.A.S. estaba sub-reportando las unidades que necesitaban servicios de reparación.
El 9 de marzo de 1995, Vivienda le informó a los administradores privados que no les extendería los contratos de administración y el 14 de marzo del mismo año, Vivienda le notificó a M.A.S. que, de *729 acuerdo a lo contenido en el contrato, ésta era deudora de $595,720.00, por concepto de una penalidad sobre aquellas viviendas que no cumplieron con los H.Q.S. Esta le informó a M.A.S. que de no pagar la penalidad impuesta, la misma le sería descontada del pago mensual por sus servicios.
No conforme con la penalidad impuesta, M.A.S. presentó una demanda contra Vivienda, solicitando sentencia declaratoria y daños y perjuicios. El 29 de marzo de 1995, M.A.S. solicitó mediante moción urgente una vista de remedios provisionales para obligar a Vivienda a pagarle las tarifas mensuales, a cambio de la prestación de una fianza por parte de M.A.S.
El tribunal a quo celebró vistas los días 5, 6 y 10 de abril de 1995. Ambas partes presentaron tanto prueba documental como testifical. Luego de las mismas, el 24 de abril de 1995 dicho foro emitió una resolución concediendo un remedio provisional a favor de M.A.S. y determinando como probados varios hechos. El tribunal le ordenó a Vivienda el pago a M.A.S. del balance correspondiente a los honorarios que Vivienda había dejado de pagarle.
Así las cosas, el 30 de junio de 1995, Vivienda contestó la demanda y reconvino contra M.A.S., reclamando una cantidad en exceso de $500,000 por concepto de las tarifas de administración de las unidades que según ésta no cumplían con los H.Q.S.
Posteriormente, M.A.S. presentó una moción de sentencia sumaria alegando que Vivienda le negó el pago de su tarifa mensual sin darle oportunidad de ser oído. Alegó M.A.S., además, que ésta había llenado equivocadamente los formularios sobre cumplimiento con los H.Q.S., ya que lo hizo con la idea de que los H.Q.S. se referían a estándares óptimos. Según M.A.S., ello dio margen a que tantas viviendas resultaran en incumplimiento con los H.Q.S., cuando en realidad los cumplían por tratarse de estándares mínimos de cumplimiento.
Posteriormente, M.A.S. solicitó una rebaja de la fianza que le fue impuesta originalmente por el tribunal apelado en su resolución del 24 de abril de 1995. El 8 de marzo de 1996, el Tribunal de Primera Instancia llevó a cabo una vista para evaluar los méritos de la solicitud de rebaja de fianza presentada por M.A.S. El 6 de mayo de 1996, dicho foro emitió una resolución en la que concedió la rebaja de fianza solicitada por M.A.S. En la misma el tribunal apelado incorporó lo determinado anteriormente en su resolución del 24 de abril de 1995. En dicho dictamen el tribunal, además, le concedió treinta (30) días a Vivienda para que ésta suplementara su escrito en oposición a la moción de sentencia sumaria con declaraciones juradas que cumplieran con los requisitos de la Regla 36 de las de Procedimiento Civil, 32 L.P.R.A. Ap. Ill, R. 36, así como prueba documental admisible dirigida a sustentar su oposición.
El 18 de diciembre de 1997, el tribunal a quo dictó sentencia sumaria declarando con lugar la demanda presentada por M.A.S. y sin lugar la reconvención presentada por Vivienda, concluyendo que no existía fundamento legal alguno para imponerle a M.A.S. la pena dispuesta por Vivienda.
No conforme con dicho dictamen, acude ante nos Vivienda alegando que incidió el Tribunal de Primera Instancia al dictar sentencia sumaria existiendo controversia sobre hechos esenciales del caso y tratándose el mismo de un caso de alto interés público. Alega Vivienda además que erró el Tribunal de Primera Instancia al concluir que las admisiones de M.A.S. y la evidencia de sus propias inspecciones no eran suficientes para imponerle a M.A.S. la referida penalidad. Evaluemos tales planteamientos.
II
La sentencia sumaria es un mecanismo procesal provisto por la Regla 36 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 36, que autoriza que se dicte sentencia sumaria inmediatamente si de las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, demuestran que no hay controversia real sustancial en cuanto a ningún hecho pertinente y que como cuestión de derecho debe dictarse la misma a favor de la parte promovente. Cuadrado Lugo v. Santiago Rodríguez, 126 D.P.R. 272 (1990).
Para poder derrotar una moción de sentencia sumaria el opositor debe presentar documentos que controviertan los hechos presentados por el promovente. Toledo Maldonado v. Cartagena Ortiz, _ *730 D.P.R. _ (1992), 92 J.T.S. 173; Cuadrado Lugo v. Santiago Rodríguez, supra. La parte opositora a la solicitud de sentencia sumaria no puede descansar meramente en aseveraciones generales, sino que tiene que sustentar sus alegaciones mediante prueba admisible. Flores v. Municipio de Caguas, 114 D.P.R. 521 (1983).
Las declaraciones juradas para oponerse a la moción de sentencia sumaria se basarán en el conocimiento personal del declarante. Contendrán los hechos que serían admisibles en evidencia y demostrarán afirmativamente que el declarante está cualificado para testificar en cuanto al contenido. Podrá incluirse, además, copias juradas o certificadas de todos los documentos que se acompañen con la oposición a la solicitud de sentencia sumaria. Regla 36.5 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 36.5.
"Como regla general, se dicta sentencia sumaria a base de los documentos admisibles en evidencia sometidos por el promovente con su moción, los documentos sometidos por la parte promovida con su moción en oposición y aquellos que obran en el expediente del tribunal." Medina Morales v. Merck, Sharp & Dohme Química de Puerto Rico, Inc., _ D.P.R. _ (1994), 94 J.T.S. 52, a la pág. 11786.
A la luz de lo anterior, evaluemos si procedía, como cuestión de derecho, decretar con lugar la solicitud de sentencia sumaria presentada por M.A.S.
ni
Según plantea Vivienda en su oposición a la moción de sentencia sumaria y en su alegato, existen hechos materiales en controversia que impiden que el presente caso pueda ser resuelto sumariamente.
Vivienda alega que existe controversia en cuanto a que M.A.S. se equivocó al completar los formularios relacionados con los H.Q.S. Según Vivienda, el estado mental del Sr. Angel Caballero Bruno, empleado de M.A.S. a cargo de la preparación de las certificaciones de cumplimiento, es una cuestión subjetiva y de credibilidad que no puede ser adjudicada mediante el mecanismo de sentencia sumaria.
En su recurso, Vivienda alega que existe controversia, además, sobre las siguientes determinaciones de hechos realizadas por el tribunal a quo:
"ó. MAS llenó los formularios sobre cumplimiento con los HQS a base de la idea de que éste se refería a estándares óptimos. Su confusión puede razonablemente provenir del memorando de 28 de julio de 1994, donde el Administrador de la Administración de Vivienda Pública define HQS como condiciones óptimas." Véase Exhibit 2, 3,10 y 12. En la petición para que se llenara el formulario no se indicó que éste tuviera que ver con la penalidad. Véase Exhibit 10 del demandante.

"10. La AVP [Vivienda] no explicó cómo llenar el formulario para informar las unidades que cumplían con los requisitos HQS, la definición de los HQS que sería utilizada y cómo se colocan las unidades que no cumplían con la inspección y luego cumplen. El Administrador de la AVP [Vivienda] reconoció que el formulario no deja espacio para hacer distinciones y dijo que esto lo podía hacer el agente administrador con explicaciones separadas que en el formulario no se piden, ni se sugieren."

Según el Administrador de la AVP [Vivienda] éste "caviló" durante cuatro (4) meses para imponer la penalidad. Durante esos cuatro (4) meses no se citó a MAS para que explicara su informe, no se investigó el estado de las unidades y no se tomó en cuenta que conforme los indicadores 6 y 7 del PHMAP, confirmados por HUD, MAS era sobresaliente en la atención de solicitudes de reparación y en las inspecciones de unidades que administra.
No le asiste la razón a Vivienda en sus planteamientos. A pesar de lo alegado por dicha parte, las anteriores determinaciones de hecho fueron realizadas por el tribunal a quo en su resolución del 24 de abril de 1995, las cuales fueron posteriormente incorporadas por completo en la resolución de dicho foro del 6 de mayo de 1996, luego de la celebración de las vistas correspondientes. Dichas determinaciones están basadas en la adjudicación de credibilidad que realizó el tribunal a quo luego de tener ante sí prueba tanto testifical como documental presentada por ambas partes. 
*731 En el presente caso, el tribunal apelado no estableció el estado mental del Sr. Caballero al llenar los formularios de cumplimiento meramente mediante el estudio de los documentos que acompañaron la moción de sentencia sumaria y su correspondiente oposición. Claramente hizo constar el foro apelado en su sentencia del 18 de diciembre de 1997, que los documentos acompañados a la oposición a la sentencia sumaria presentada por Vivienda no fueron suficientes para controvertir las determinaciones de hecho realizadas anteriormente por el foro apelado. De hecho, en una determinación preliminar realizada por el tribunal apelado el 6 de mayo de 1996, el tribunal concedió término adicional a Vivienda para que sustentara debidamente su oposición a la solicitud de sentencia sumaria. El Tribunal le ordenó a Vivienda incluir declaraciones juradas que cumplieran con la Regla 36.5 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 36.5. Esto es, declaraciones juradas que se basaran en el conocimiento personal del declarante, que incluyeran hechos admisibles en evidencia y que demostraran afirmativamente que el declarante tiene capacidad para declarar en el juicio. 
En el presente caso el tribunal a quo, para determinar aquellos hechos que no estaban en controversia, utilizó las determinaciones anteriormente realizadas por el propio tribunal en resoluciones anteriores, las cuales estaban relacionadas con incidentes anteriores del mismo caso. No era necesario que el tribunal determinara nuevamente tales hechos, cuando ya habían sido probados por las partes y determinados por el propio foro.
Es norma trillada que un tribunal apelativo no intervendrá con las determinaciones de hecho realizadas por un tribunal sentenciador a menos que se demuestre que dicho tribunal actuó motivado por pasión, prejuicio, parcialidad o que cometió error manifiesto. Orta v. Padilla, _ D.P.R. _ (1995), 95 J.T.S. 21, a la pág. 668; Rodríguez v. Machado, D.P.R._(1994), 94 J.T.S. 82, a la pág. 12008; Cooperativa v. Lugo, _ D.P.R. _ (1994), 94 J.T.S. 77, a la pág. 11985. Las alegaciones de Vivienda en su escrito no son suficientes para que este Tribunal altere las determinaciones de hecho realizadas por el tribunal a quo.
Como indicamos anteriormente, al resolver una solicitud de sentencia sumaria, un tribunal puede considerar, no tan sólo los documentos que acompañan a la moción de sentencia sumaria y a su correspondiente oposición, sino también todos aquellos documentos que obran en el expediente del caso. Medina Morales v. Merck, Sharp & Dohme Química de Puerto Rico, Inc., supra.
Por otro lado, a pesar de nuestro entronque civilista, el Tribunal Supremo ha sancionado la doctrina de la ley del caso de origen anglo-americana, adoptando las normas de los sistemas jurídicos avanzados. Como una cuestión de sana práctica y no como regla inviolable, un tribunal debe acatar sus pronunciamientos anteriores dentro de un mismo caso, a los fines de velar por un trámite ordenado y rápido, así como por la estabilidad y certeza de derecho. Soc. Legal de Gananciales Borges Huergo v. Pauneto Rivera y otros, _ D.P.R. _ (1992), 92 J.T.S. 78; U.S.I. Properties, Inc. v. Registrador, 124 D.P.R. 448 (1989); Sánchez Rodríguez v. López Jiménez, 118 D.P.R. 701 (1987).
A base de los hechos no controvertidos, el tribunal a quo determinó que no existía fundamento legal para imponerle a M.A.S. la penalidad impuesta por Vivienda. Tal y como resolvió el tribunal, del contrato no surge el procedimiento a seguir en caso de incumplimiento por parte del administrador. Tampoco Vivienda demostró que hubiese incumplido con los H.Q.S. por dieciséis (16) meses, según alega Vivienda, ni tampoco que la falta se debiera exclusivamente a M.A.S. Más aún, según demostró M.A.S. y no fue controvertido por Vivienda, M.A.S. obtuvo las calificaciones más altas entre los administradores privados en relación con los indicadores 6 y 7.
Contrario a lo alegado por Vivienda, el hecho de que en el caso de autos esté envuelto un interés público por tratarse de una agencia gubernamental, no es óbice para que el tribunal a quo resolviera la controversia presentada mediante el mecanismo de sentencia sumaria. Según ha resuelto el Tribunal Supremo, en casos que conlleven un alto interés público podrá dictarse sentencia sumaria cuando el tribunal quede claramente convencido de que tiene ante sí todos los hechos materiales pertinentes de forma no controvertida y que una vista en los méritos resulta innecesaria. Soto v. Hotel Caribe Hilton, _ D.P.R. _ (1994), 94 J.T.S. 128; HMCA y Olivera Mariani v. Colón Carlo, _ D.P.R. _ (1993), 93 J.T.S. 112.
Por los fundamentos anteriormente expuestos, este Tribunal resuelve que no cometió error el *732 Tribunal de Primera Instancia al dictar sentencia sumaria en el presente caso y declarar con lugar la demanda presentada por M.A.S. contra Vivienda. Por lo cual, se confirma la sentencia apelada.
Así lo acordó y manda el Tribunal y lo certifica la Señora Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General